UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:17-CV-00042-GNS

TIMOTHY ELLIS                                                                                          PLAINTIFF

v.

CITY OF PROVIDENCE, KENTUCKY et al.                                            DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Motion for Summary Judgment (DN 80) and Motion Exclude Expert Testimony (DN 82) on behalf of Defendants Dustin Winstead and City of Providence. The motions are ripe for decision.

### I.   BACKGROUND

Defendants William Dukes ("Dukes") and Dustin Winstead ("Winstead") were police officers for Defendant City of Providence, Kentucky ("Providence") at the time of the events giving rise to this case. (Compl. ¶ 2, DN 1). On March 26, 2016, the two officers responded to a call from Takiesha Sims ("Sims") in Providence. (Defs.' Reply Mot. Summ. J. 2, DN 91). Sims told the officers that Plaintiff Timothy Ellis ("Ellis"), her ex-boyfriend, was "crazy drunk" and had just beaten her, smashed her cell phone, and ran over her foot with his car. (Defs.' Reply Mot. Summ. J. 2 (citations omitted)). The officers observed bruising on Sims' face and damage on a nearby trailer that Ellis had evidently struck with his car. (Defs.' Reply Mot. Summ. J. 2).

Sims directed the two officers toward Westerfield Drive in Providence, where they found Ellis walking on the sidewalk. (Winstead Dep. 23:8-20, July 17, 2019, DN 80-5). He was indeed drunk; Ellis admitted that he had "eight or nine" beers and multiple shots of liquor earlier

1

that evening. (Ellis Dep. 80:13:81-11, Mar. 28, 2018, DN 80-4). The officers approached Ellis, directed him to take his hands out of his pockets, and then told him to put his hands on the police car, to which he responded "[f]or what?". (Ellis Dep. 80:4-11). According to Winstead, when Ellis did not place his hands on the car when asked, Winstead reached for Ellis' shoulder to try to turn him towards the vehicle. (Winstead Dep. 24:7-23). When Ellis yanked away from Winstead's reach, Dukes tased him. (Winstead Dep. 24:19-25:3).

      The taser knocked Ellis unconscious, causing him to slide to the ground. (Pl.'s Resp. Defs.' Mot. Summ. J. 3, DN 88). After handcuffing Ellis, the officers performed sternum rubs to wake him, and after a few seconds, Ellis regained consciousness. (Pl.'s Resp. Defs.' Mot. Summ. J. 3; Winstead Dep. 26:6-24). The officers then informed Ellis that he was under arrest and instructed him to get in Dukes' squad car. (Dukes Bodycam Video 1 - pt. 2, DN 81 [hereinafter DN 81 Bodycam]). When Ellis did not stand up, the officers picked him up and carried him to the car, with Winstead holding his torso and Dukes carrying his feet. (DN 81 Bodycam; Winstead Dep. 29:8-11). Ellis can be heard on the audio kicking and screaming as the officers tried to place him in the car. (DN 81 Bodycam). At one point, Ellis kicked Dukes in the genitals. (DN 81 Bodycam; *see also* Ellis Dep. 115:21-116:5, Mar. 28, 2018, DN 80-4). Dukes deployed his taser seven additional times during the struggle to get Ellis into his car, but Ellis continued to struggle even after the subsequent taser deployments. (DN 81 Bodycam; Defs.' Mem. Supp. Mot. Summ. J. 7, DN 80-1; Pl.'s Resp. Defs.' Mot. Summ. J. 18).

      Before heading back to the police station, the officers called the local EMS team to meet them there and tend to Ellis. (Winstead Dep. 29:4-7). Upon arrival at the station, the EMTs sought to remove the taser barbs from Ellis' body, but there were none to remove; all of the barbs were caught in Ellis' thick jacket. (Tapp Dep. 4:25-5:13, Feb. 14, 2019, DN 80-10). One

2

of the EMTs testified that Dukes delivered knee strikes to Ellis' upper leg area after the check for taser barbs had concluded, specifically that Dukes shoved Ellis to the ground and gave him half a dozen knee strikes, even though Ellis was in handcuffs and not resisting the police in any way. (Tapp Dep. 9:1-10:25). The EMT did not see Ellis do anything to cause or provoke the knee strikes, and he left the scene believing that what Dukes did "wasn't right." (Tapp Dep. 10:22-11:16). Winstead also testified that Dukes hit Ellis with his knees while they were at the station, but he claims there were only two knee strikes. (Winstead Dep. 33:20-34:7, 35:5-10).

Ellis was charged with domestic violence for his alleged beating of Sims, but those charges were ultimately dismissed. (Defs.' Mem. Supp. Mot. Summ. J. 9-10). He later filed suit in this Court under 42 U.S.C. § 1983, alleging excessive force and state-law assault against Dukes and Winstead. (Compl. ¶¶ 6-23). In addition to respondeat superior claims against Providence for Dukes' and Winstead's actions, Ellis asserted a separate claim that Providence "had prior notice of actions by its Officer Dukes and they did nothing to prevent same from occurring to" Ellis. (Compl. ¶¶ 21-22). While this suit has been pending, Dukes was convicted and sentenced to forty-two months in prison by this Court for violating another arrestee's constitutional rights during an arrest that occurred roughly two months after the incident giving rise to the instant action. *United States v. Dukes*, 779 F. App'x 332, 336 (6th Cir. 2019).

## II. JURISDICTION

The Court has jurisdiction over the parties pursuant to 28 U.S.C § 1331 as this case arises under the Constitution of the United States. This Court has supplemental jurisdiction over all state law claims under 28 U.S.C. § 1367(a).

### III. DISCUSSION

#### A. Defendants' Motion for Summary Judgment

Providence and Winstead move for summary judgment against them on all claims.[1] Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying the portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there

---

[1] In his response, Ellis incorrectly states that Providence, Winstead, and Dukes all moved for summary judgment. (Pl.'s Resp. Defs.' Mot. Summ. J. 5). The motion was filed together by Providence and Winstead, but not Dukes. (Defs.' Mot. Summ. J. 1, DN 80). Winstead and Providence share the same counsel, who does not represent Dukes. (*See, e.g.*, Order 1, DN 58). Dukes' original counsel withdrew from this case in early 2021, but no attorney has entered an appearance nor have any motions been made on his behalf. (Order, DN 49).

must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

        1.    *Winstead*

           a.    **Excessive Force**

Because Ellis was indisputably a free citizen at the time at the time of his arrest, his excessive-force claims will be analyzed under the Fourth Amendment. *See Murphy v. Pike Cnty. Det. Ctr.*, 474 F. Supp. 3d 876, 884 (E.D. Ky. 2020) (citing *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013)).

Ellis initially accused both Dukes and Winstead of using excessive force and assaulting him. (Compl. ¶¶ 7-15). Discovery has revealed, however, that Winstead did not tase or knee strike Ellis or perform any of the physical acts that make up his claims; only Dukes tased and kneed Ellis. (Pl.'s Resp. Defs.' Mot. Summ. J. 3-4, 12, 19). Because of this, Ellis abandons his direct excessive-force claim against Winstead, but asserts that Winstead witnessed Dukes using excessive force and failed to intervene. (Pl.'s Resp. Defs.' Mot. Summ. J. 18-20).

Importantly, Ellis did not plead this failure-to-intervene theory in the Complaint. However, "a plaintiff may not expand his claims to assert new theories for the first time in response to a summary judgment motion." *Desparois v. Perrysburg Exempted Vill. Sch. Dist.*, 455 F. App'x 659, 666 (6th Cir. 2012) (quoting *Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007)). The Sixth Circuit has specifically held that excessive-force litigants may not argue failure to protect claims at summary judgment after not pleading such a claim. *See Alexander v. Carter for Byrd*, 733 F. App'x 256, 264-65 (6th Cir. 2018); *see also Hornback v. Czartorski*, No. 3:20-CV-703-RGJ, 2022 WL 3084592, at *22 (W.D. Ky. Aug. 3, 2022) (granting summary judgment after refusing to read failure-to-intervene claim against one

defendant as a broader claim against all defendants, for that would not give fair notice to the other defendants). Winstead is entitled to summary judgment on the excessive-force claim on this ground alone.

Even if Ellis pleaded a failure-to-intervene claim before summary judgment, he has not presented enough evidence for a reasonable jury to find for him on that theory. *See Anderson*, 477 U.S. at 252. Under 42 U.S.C. § 1983, a police officer may be held liable for the use of excessive force if he "(1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997) (citations omitted). Winstead cannot be liable under the first theory because he indisputably did not tase or knee strike Ellis, nor did he direct Dukes to do so. *See Toon v. City of Hopkinsville*, No. 5:09-CV-37, 2011 WL 1885406, at *2 (W.D. Ky. May 18, 2011) (rejecting argument that officer actively participated in tasing when he restrained suspect but did not use or direct use of taser). Of course, Winstead cannot be liable under the second theory because he was not Dukes' supervisor; to the contrary, Dukes was Winstead's supervisor. (Winstead Dep. 39:8-14).

As for the third theory, Ellis needs to show that "(1) [Winstead] [] observed or had reason to know that excessive force would be or was being used, and (2) had both the opportunity and the means to prevent the harm from occurring." *Turner*, 119 F.3d at 429 (citing *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). Assuming the force Dukes used against Ellis was excessive, Ellis has not demonstrated that Winstead had an opportunity to prevent it. The first tase occurred when Winstead had his hand on Ellis' shoulder, and Dukes gave no warning that he was about to use his taser. (Pl.'s Resp. Defs.' Mot. Summ. J. 3 (citing (Winstead Dep. 24:19-24))). There is no proof that Winstead could have prevented the tase given his positioning at the

time. During the next seven tases, Winstead was restraining Ellis' upper body while Ellis was clearly struggling and resisting arrest. (DN 81 Bodycam). The Sixth Circuit has held that when an officer is occupied with controlling a suspect's body while the suspect is tased by another officer, no reasonable jury could find that the restraining officer had the opportunity to prevent the tasing. *Wright v. City of Euclid*, 962 F.3d 852, 872 (6th Cir. 2020) (citing *Smith v. City of Troy*, 874 F.3d 938, 946 (6th Cir. 2017)). Finally, regarding the knee strikes, the evidence most favorable to Ellis shows that he received six gratuitous knee strikes in quick succession. (Tapp Dep. 9:1-4). There is no indication that Winstead had a reasonable opportunity to intervene before Dukes delivered the knee strikes. For these reasons, this claim against Winstead is dismissed.

### b. Assault

In his response, Ellis appears to abandon his assault claim against Winstead, only referring to Dukes and his actions regarding the assault. (Pl.'s Resp. Defs.' Mot. Summ. J. 24-27). By failing to address Winstead's motion, Ellis concedes that Winstead did not assault him. *See Kinsey v. Ohio*, No. 20-3315, 2021 WL 1100494, at *2 (6th Cir. Jan. 11, 2021) ("A plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." (citing *Bridgeport Music*, 508 F.3d at 400)). This is consistent with the analysis above concluding that Winstead neither tased nor kneed Ellis, so no reasonable jury could find that Winstead assaulted Ellis. *See Toon*, 2011 WL 1885406, at *2. Winstead's motion for summary judgment is granted, and he is dismissed from this case.

### 2. *Providence*

#### a. **Excessive Force**

Ellis claims that Providence is liable for any excessive force used by Dukes via *respondeat superior*. But under *Monell v. Department of Social Services of City of New York*, 436 U.S 658 (1978), "[m]unicipalities cannot be held liable for Section 1983 claims under the theory of *respondeat superior*; instead, a plaintiff must allege that the municipality's policy or custom caused the alleged injury." *Est. of Marr by & through Marr v. City of Glasgow*, No. 1:21-CV-00050-GNS, 2022 WL 847233, at *3 (W.D. Ky. Mar. 21, 2022) (citing *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006)) (internal quotation marks omitted). The Complaint and other filings do not point to any city policy or custom that caused Ellis harm, but he also pleaded that Providence had notice of other instances of excessive force by Dukes and did nothing to prevent further occurrences. (Compl. ¶ 22). The Court construes this as pleading *Monell* via the "inaction theory", under which the plaintiff must show: (1) a clear and persistent pattern of unlawful conduct; (2) defendant's notice of that conduct; (3) defendant's tacit approval of the conduct, "such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction"; and (4) defendant's custom was the moving force behind the conduct. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Doe v. Claiborne Cnty.*, 103 F.3d 495, 508 (6th Cir. 1996)).

Ellis cannot succeed under this theory because he did not make sufficient showings for the first or third elements. For the first element, Ellis presented evidence that Dukes once slammed an arrestee's head into a table during a blood draw. (Burns Dep. 7:10-10:3, Feb. 14, 2019, DN 80-21). This single alleged instance of prior excessive force by Dukes "is not sufficient to impose liability under *Monell*" unless it is tied to an explicit policy. *City of*

*Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985). Ellis described at length the unlawful May 2016 arrest of another man for which Dukes has been sent to prison, but that arrest occurred two months *after* Ellis' arrest and therefore cannot support a claim that Providence was aware of *prior* instances of excessive force by Dukes. (Pl.'s Resp. Defs.' Mot. Summ. J. 7-8).

Ellis also failed to meet the third element of *Thomas* because he points to no evidence that the city or any of its officials tacitly approved of or ignored Dukes' conduct. In fact, his proffered evidence shows the opposite. Providence's fire chief testified that he complained to the city's mayor about Dukes multiple times, and the mayor investigated each complaint. (Curry Dep. 12:19-13:25, Feb. 14, 2019, DN 80-19). In fact, the fire chief said that the mayor was actively looking for "anything to get this guy out of our hair and get him down the road", but his investigations never uncovered a valid reason to terminate Dukes. (Curry Dep. 13:22-14:3). The mayor felt that "he [would have been] putting . . . the city at a higher risk" if he fired Dukes because with "the Policeman's Bill of Rights, you're going to get sued." (Curry Dep. 14:12-15:5). In other words, Providence suspected a problem with Dukes, but the mayor did not feel the city had enough cause to fire Dukes without risking legal liability. (Curry Dep. 14:12-15:5; Pl.'s Resp. Defs.' Mot. Summ. J. 6 (citing (Curry Dep. 15:18-25)). A reasonable jury could not conclude from this testimony that Providence was deliberately indifferent to Dukes' acts of violence, the only specific instance of which occurred **after** Ellis was arrested. Providence's motion is granted with respect to Ellis' excessive-force claim.

### b. Assault

While local governments cannot be liable for their officers' constitutional violations under a *respondeat superior* theory, they can be liable under that theory for state-law torts. *City of Lexington v. Yank*, 431 S.W.2d 892, 894-95 (Ky. 1968); *see Louisville/Jefferson Cnty. Metro*

*Gov't v. Braden*, 519 S.W.3d 386, 392-93 (Ky. App. 2017). In Kentucky, "[a]ssault is a tort which merely requires the threat of unwanted touching of the victim . . . ." *Banks v. Fritsch*, 39 S.W.3d 474, 480 (Ky. App. 2001) (citation omitted). However, a police officer is privileged to use force that would typically constitute an assault when arresting a person if the officer: (1) believes that such force is necessary to effectuate the arrest; (2) makes known the purpose of the arrest, unless doing so is unnecessary or infeasible; and (3) believes the arrest to be lawful. *West v. City of Paris*, No. 13-CV-193-JMH, 2015 WL 278142, at *6 (E.D. Ky. Jan. 22, 2015) (citing KRS 503.090). Kentucky also has its own version of qualified immunity that protects an officer's performance of discretionary acts. An officer's act is protected if it is: (1) discretionary, (2) performed in good faith, and (3) within the scope of his authority. *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). If a defendant asserting *Yanero* immunity shows that his act was discretionary and within the scope of his authority, the burden shifts to the plaintiff to show that the act was performed in bad faith. *Id.* Bad faith "can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position . . . ." *Id*. (citation omitted). It can also "be demonstrated by objective unreasonableness or by a subjective intention to harm (i.e., a 'corrupt motive')." *Williams v. Sandel*, 433 F. App'x 353, 363 (6th Cir. 2011) (citing *Yanero*, 65 S.W.3d at 523).

With regard to Providence's responsibility under state law for Dukes' actions in tasing Ellis, Dukes would be entitled to *Yanero* immunity because Ellis did not show that the tasings were performed in bad faith. There is no constitutional violation on which to predicate bad faith because the tasings did not constitute excessive force. "While the use of a stun gun or a Taser on a non-resistant person would be unreasonable absent some compelling justification," the Sixth

10

Circuit has held that a nearly unlimited number of tasings is allowed if the suspect continues to resist arrest. *West*, 2015 WL 278142, at *4; *Williams*, 433 F. App'x at 362 (reversing denial of summary judgment when suspect who was tased *thirty-seven times* did not stop resisting until after the thirty-seventh taser application). Courts treat taser applications on a resisting suspect as reasonable and applications on a compliant suspect as unreasonable. *See Hagans v. Franklin Cty. Sheriff's Off.*, 695 F.3d 505, 509 (6th Cir. 2012) (collecting cases). The first tasing was justified because the evidence establishes that Ellis was resisting the officers by refusing to place his hands on the squad car and jerking away from Winstead. *See Rudlaff v. Gillispie*, 791 F.3d 638, 642 (6th Cir. 2015) (citing *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 495 (6th Cir. 2012)) (holding that "disobeying officers" constitutes "active resistance"). The subsequent tases were justified because, as shown by Dukes' bodycam footage, Ellis clearly continued resisting arrest by kicking Dukes even while he was repeatedly tased. (DN 81 Bodycam); *Green v. Throckmorton*, 681 F.3d 853, 859 (6th Cir. 2012). There is also no evidence that Dukes' tases were meant to harm Ellis. Ellis argues that Dukes was trying to hurt him because he "had a pattern of exhibiting excess force on citizens that he arrested." (Pl.'s Resp. Defs.' Mot. Summ. J. 22). But just because Dukes may have acted in bad faith when arresting other people is not evidence that he acted in bad faith here. Providence's motion is granted with respect to its liability for Dukes' use of the taser on Ellis.

The knee strikes at the police station, however, are a different story. Interpreting the EMT's testimony in the light most favorable to Ellis, Dukes kneed him in the upper-thigh area multiple times for no reason whatsoever. (Tapp Dep. 9:15-18). As with tasers, knee strikes are justified when a suspect is resisting arrest but cannot be used when the suspect is not resisting. *See Lawler v. City of Taylor*, 268 F. App'x 384, 386-87 (6th Cir. 2008) (affirming denial of

11

summary judgment on assault and excessive-force claims when officer gave suspect "gratuitous" knee strikes); *Rudlaff*, 791 F.3d at 642 ("When a suspect actively resists arrest, the police can use a taser (or a knee strike) to subdue him; but when a suspect does not resist, or has stopped resisting, they cannot."). A reasonable jury could find, based on the EMT's testimony, that Dukes had no justification for knee striking Ellis and his knee strikes were a constitutional violation constituting bad faith, which would preclude *Yanero* immunity. *See Yanero*, 65 S.W.3d at 522. The jury could also find that because Ellis was already cuffed and not resisting, Dukes did not believe the knee strikes were necessary to effectuate the arrest, making the strikes an unprivileged assault. *See West*, 2015 WL 278142, at *6.

Providence objects that Ellis did not mention the knee strikes in the Complaint, so they cannot form the basis of a claim now. (Defs.' Mem. Supp. Mot. Summ. J. 8 n.6). But the Complaint says that the officers used excessive force "including *but not limited to* his being tased approximately seven times." (Compl. ¶ 6 (emphasis added)). This factual allegation was then incorporated by reference into the assault claim. (Compl. ¶ 13). Providence had adequate notice that the entire arrest would be under scrutiny and that the claims were not limited to just the tasings. Providence also asserts that Winstead testified that Dukes needed to use two knee strikes to get Ellis to comply with his orders, showing that the strikes were "justified and privileged." (Defs.' Reply Mot. Summ. J. 16). Winstead's testimony is not dispositive, however, in light of the EMT's testimony that Ellis was not resisting and there was no apparent reason for the knee strikes. Providence even admits that Winstead and the EMT offer "completely differing accounts." (Defs.' Reply Mot. Summ. J. 16). It will be up to the jury to decide which of those differing accounts is more credible. Providence's motion is denied with respect to Ellis' assault claim based on the knee strikes.

12

### 3. *Intentional Infliction of Emotional Distress*

In their motion, Winstead and Providence preemptively defend against an intentional infliction of emotional distress ("IIED") claim in case "the Court interprets Plaintiff's Complaint of (*sic*) asserting a state law claim of intentional infliction of emotional distress." (Defs.' Mem. Supp. Mot. Summ. J. 32). But neither party points to any section of the Complaint comprising an IIED claim, and the Court cannot find any language in the Complaint that could possibly be construed as such. Ellis simply did not plead it. And because he did not plead IIED, Ellis will not be allowed to argue that legal theory at trial. *See Alexander*, 733 F. App'x at 264.

### B. **Defendants' Motion to Exclude Expert Testimony**

Winstead and Providence also move to exclude the expert testimony of Dr. Darrin Porcher ("Porcher"). (Defs.' Mot. Exclude, DN 82). Porcher is a retired New York City Police Department Lieutenant and instructor who has extensive knowledge of police use-of-force application procedures. (Porcher Expert Report 3, DN 89-7). He has been qualified as an expert witness in numerous other police use-of-force cases across the country. (Porcher Expert Report 3). Porcher was deposed in this case, and he also submitted a report summarizing his analysis of the various uses of force on Ellis, such as taser usage and the placement of Ellis in a prone position. (Porcher Dep., Jan. 18, 2023, DN 87-1; Porcher Expert Report 22-24). Porcher identified failures of the Providence mayor and police chief to properly train, supervise, and discipline Dukes (even though Ellis did not assert claims for failure to train or supervise). (Porcher Expert Report 15-18, 24-25). Winstead and Providence now move to exclude Porcher's report and testimony because it improperly reaches legal conclusions and merely makes observations that the jury can make for itself. (Defs.' Mem. Supp. Mot. Lim. 1, DN 82-1).

> Fed. R. Evid. 702 provides that
>
> "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

Fed. R. Evid. 702. Under this rule, the trial judge acts as a gatekeeper to ensure that expert evidence is both reliable and relevant. *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 429 (6th Cir. 2007). As the Sixth Circuit has noted:

> Parsing the language of the Rule, it is evident that a proposed expert's opinion is admissible, at the discretion of the trial court, if the opinion satisfies three requirements. First, the witness must be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Second, the testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* Third, the testimony must be reliable.

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528-29 (6th Cir. 2008) (citing Fed. R. Evid. 702). "Rule 702 guides the trial court by providing general standards to assess reliability." *Id.* at 529.

In determining whether testimony is reliable, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993). The Supreme Court identified a nonexhaustive list of factors that may help the Court in assessing the reliability of a proposed expert's opinion. These factors include: (1) whether a theory or technique can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error; and (4) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." *Id.* at 592-94. This gatekeeping role is not limited to expert testimony based on scientific knowledge, but instead extends to "all scientific, technical,

or other specialized matters" within the scope of Fed. R. Evid. 702. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (internal quotation marks omitted). Whether the Court applies these factors to assess the reliability of an expert's testimony "depend[s] on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id.* at 150 (internal quotation marks omitted) (citation omitted). Any weakness in the underlying factual basis bears on the weight, as opposed to admissibility, of the evidence. *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 530; *see also Brooks v. Caterpillar Glob. Mining Am., LLC*, No. 4:14-cv-22-JHM, 2017 WL 5633216, at *1-2 (W.D. Ky. Nov. 22, 2017).

To determine whether an expert's testimony is relevant, courts look to "whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." Fed. R. Evid. 702 advisory committee notes to 1972 amendment (quoting Mason Ladd, *Expert Testimony*, 5 Vand. L. Rev. 414, 418 (1952)). "A district court may commit manifest error by admitting expert testimony where the evidence impermissibly mirrors the testimony offered by fact witnesses, or the subject matter of the expert's testimony is not beyond the ken of the average juror." *United States v. Amuso*, 21 F.3d 1251, 1263 (2d Cir. 1994) (citations omitted); *see also United States v. Rios*, 830 F.3d 403, 413 (6th Cir. 2016) (citing *Amuso* with approval). In cases involving law-enforcement experts, the Sixth Circuit has found that Rule 702's relevancy analysis requires the district court, in performing its gatekeeping function, to assess whether, "without expert testimony, the average juror is unlikely to understand" the material about which the expert proposes to testify. *See United States v. Thomas*, 74 F.3d 676, 682 (6th Cir. 1996) *abrogated on other grounds by Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 515 (6th Cir. 1998). Further, "Sixth Circuit law

also prohibits expert witnesses from reaching legal conclusions in their testimony or from telling jurors what result to reach on the ultimate issues in a case." *United States v. Arrow-Med Ambulance, Inc.*, No. 17-CR-73-JMH, 2018 WL 1902682, at *4 (E.D. Ky. Apr. 20, 2018) (citing *Berry v. City of Detroit*, 25 F.3d 1342, 1353-54 (6th Cir. 1994)). "[T]estimony offering nothing more than a legal conclusion—i.e., testimony that does little more than tell the jury what result to reach—is properly excludable under the Rules." *Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997). The Sixth Circuit has specifically held that telling the jury a defendant's conduct constituted excessive force is a legal conclusion that experts are not allowed to give. *DeMerrell v. City of Cheboygan*, 206 F. App'x 418, 426-27 (6th Cir. 2006); *see also Summerland v. Cnty. of Livingston*, 240 F. App'x 70, 81 (6th Cir. 2007) (expert opinion that force was not "reasonable" was an inadmissible legal conclusion).

Per the discussion above, the only claim remaining against the moving Defendants is the assault claim against Providence based on Dukes' knee strikes on Ellis. Thus, the parts of Porcher's report and testimony that are unrelated to the knee strikes—such as his opinions on the proper use of tasers, whether Winstead could have prevented Dukes' use of excessive force, and whether Providence's police department failed to train its officers—are not relevant to the remaining issues.

Porcher's description of the knee strikes relate to his understanding of the facts surrounding the knee strikes, which he gained from viewing the same evidence that will be presented to the jury at trial. (Porcher Dep. 154:17-157:5, 161:11-13; Porcher Expert Report 2-3). Any testimony from Porcher about these facts would simply echo that of the fact witnesses, which the jury is perfectly capable of understanding without Porcher repeating those same descriptions back to them. *See Amuso*, 21 F.3d at 1263; *Thomas*, 74 F.3d at 682. Porcher's

16

opinion that he "thought the knee strikes to the back were excessive" is based purely on his observation that Ellis was handcuffed and in custody, which are same facts the jury will see. (Porcher Dep. 161:11-13). This legal conclusion is precisely the sort of testimony an expert cannot give. *See DeMerrell*, 206 F. App'x at 426-27. Whether Dukes' knee strikes were excessive is what the jury will be called upon the decide at trial, and Porcher cannot tell the jury what result it should reach. *See Woods*, 110 F.3d at 1220.

Porcher's opinion that Dukes used excessive force infringes on the province of the jury applying a United States Supreme Court case, *Graham v. Connor*, 490 U.S. 386 (1989), and concluding that "Dukes'[] actions clearly reflect excessive force." (Porcher Expert Report 19-22). Again, Porcher gives a legal conclusion and tells the jury how it should decide the case. *See Woods*, 110 F.3d at 1220; *DeMerrell*, 206 F. App'x at 426-27. In this regard, Porcher's analysis not only usurps the jury; it usurps the Court. Porcher is not a lawyer and is not qualified to explain *Graham v. Connor* or any other legal standard to the jury. And even if he was, it is not proper for an expert witness explain the law. "Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards." *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997) (citation omitted); *accord Rice v. City of N. Las Vegas*, No. 2:07-CV-01192-RCJ-GWF, 2009 WL 10710042, at *4 n.1 (D. Nev. Nov. 4, 2009) ("Expert testimony on legal issues for a judge to decide, offered as 'evidence,' is generally inappropriate."). The Court, not Porcher, will instruct the jury on the governing law.

In response, Ellis primarily argues that Porcher's education and policing experience make him more than qualified to testify on law-enforcement matters, but Ellis seems to misunderstand the shortcomings of Porcher's testimony. The moving Defendants do not contest that Porcher is

17

well qualified to comment on proper policing methods, police training, general policing customs, and the like. Indeed, his testimony on the proper use of tasers and the dangers of putting suspects in prone positions may have been quite helpful to the jury if pertinent to the remaining claim against Providence. (Porcher Expert Report 22-24). Similarly, Porcher's knowledge of proper police training, supervision, and discipline could be helpful to the jury had Ellis ever alleged that Providence failed to train or supervise its officers. (Porcher Expert Report 15-17, 24-25). Rather, much of what Porcher provides is not proper for any expert witness to give, no matter how qualified. Porcher's opinions relevant to the remaining issue consist entirely of factual findings concerning which he has no first-hand knowledge, legal explanations, and applications of the law to the facts. These are jobs for the judge and the jury, not an expert witness.

Moving Defendants also urge that the section of Porcher's report discussing the arrest of Jeffrey Littlepage ("Littlepage") two months after the events in question be excluded because it is irrelevant and is likely to prejudice the jury. (Defs.' Mem. Supp. Mot. Lim. 7). Indeed, that later arrest is not relevant to Ellis' arrest at all, and the jury likely will be prejudiced if it learns that Dukes was convicted of a federal crime and sent to prison for using excessive force on another occasion after Ellis was arrested. *See* Fed. R. Evid. 402, 403. Ellis argues that the Littlepage arrest could be relevant to prove punitive damages, but even if that were true, the only remaining claim against the Moving Defendants is against Providence, a municipality. (Porcher Expert Report 11-12). Of course, litigants cannot recover punitive damages from municipalities under Kentucky law. *Schell v. Young*, 640 S.W.3d 24, 44 (Ky. App. 2021).

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** as follows:

1.  Defendants' Motion for Summary Judgment (DN 80) is **GRANTED** with respect to Winstead and **GRANTED IN PART** and **DENIED IN PART** with respect to the City of Providence. The only claim against these Defendants remaining for trial is the assault claim against the City of Providence based on Dukes' use of knee strikes.

2.  Defendants' Motion to Exclude Expert Testimony (DN 82) is **GRANTED.**

Greg N. Stivers, Chief Judge
United States District Court

August 1, 2023

cc: counsel of record
William Dukes, Jr., *pro se*